# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2947

_____

| | | |
|---|---|---|
| David Eckles, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| City of Corydon; Wayne County; | * | |
| David Clayton; Richard Couchman; | * | |
| Maurice Auxier; Gene Gibbs; Paul | * | |
| Overton; Kay Middlebrook, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 12, 2003

Filed: September 3, 2003

_____

Before BOWMAN[1], HEANEY and BYE, Circuit Judges.

_____

HEANEY, Circuit Judge.

David Eckles sued the City of Corydon, Iowa (City), Wayne County, Iowa (County), and various City and County officials alleging constitutional claims under the First Amendment and the Equal Protection Clause, and a state law claim of intentional infliction of emotional distress. These charges relate to property value

---

[1]Effective August 1, 2003, the Honorable Pasco M. Bowman assumed senior status.

assessments of Eckles's residence and efforts by the City and County to force Eckles to remove signs he painted and posted on his property. The district court[2] granted summary judgment in favor of the defendants on all counts, and Eckles appeals. We reverse with regard to the First Amendment claim against the City defendants and affirm the district court in all other respects.

BACKGROUND

David Eckles owns real property (including a house) in Corydon, a city located in Wayne County, Iowa. He purchased the property in 1987 for the sum of $14,000. Eckles's companion lived in the house until his death in 1993. Eckles moved in shortly thereafter. In 1995, the assessed value of the residence was $21,591. Around this time Eckles began renovating the house. The assessed value of the property increased during the next several years, and by 1999, it had risen to $98,302.00. Eckles appealed the 1999 valuation, alleging the property had been wrongfully overvalued due to his perceived homosexuality. The appeal hearing was scheduled for a date when Eckles would be out of town and unable to attend. The Wayne County Board of Review (Board of Review) denied Eckles's request to reschedule the hearing. As a result, Eckles's attorney represented him at the hearing. The Board of Review upheld the assessment without viewing the property. In June 1999, Eckles appealed the Board of Review's decision to the Iowa state court for Wayne County. In October 1999, while the appeal was pending, the State of Iowa issued a State Equalization Order for increases in the assessed value of all residential property in Wayne County. Accordingly, the Wayne County Assessor, Kay Middlebrook, increased the assessed value of Eckles's property to $107,150.

In July 2000, Eckles posted a large sign on his house and other signs on his property. The signs expressed Eckles's dissatisfaction with the valuation of his home, combined religious and political statements, and criticized officials of both the City

---

[2]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

and the County.[3]  On August 2, 2000, Eckles's attorney received a letter from an

———————————

[3]Since July 2000, Eckles has posted several signs on his property.  The following examples are illustrative of the messages displayed:

- "You are looking at the reality of God in my life, and God's judgment upon the wicked. - I am not a QUEER!  I am not a FAGGOT!  What I am is a repentant Sinner Saved by the Mercy and Grace of God. - Church Member Richard Couchman has cast the first Stone WHO WILL BE NEXT?"

- "City of Corydon and Wayne County Guilty of Prejudice, discrimination, bigotry, bias."

- "PROPERTY TAXES in CORYDON and Wayne County.  FALSE, UNFAIR, and UNJUST, A FALSE BALANCE TAXES is Abomination TO THE LORD.  Proverb 11:1.  CITY OF CORYDON Abomination to the Lord, and Wayne County.  REPENT."

- "The THIEF (Wayne County Assessor) commeth but to Steal.  John 10:10"

- "This home Destroyed because of Wayne County ASSESSOR.  I can't afford the false  unfair and unjust taxes.  No Compromise."

- "SHAME, SHAME, SHAME.  This property ALSO over TAXED!  By Assessor Kay Middlebrook - Church Member Richard Couchman (Board of Review) Denied me 3rd Appeal.  No Compromise."

- "Declare ye among the nations, and publish, and set up a standard; publish, and conceal not: Jer. 50:2.  The whole land is made desolate, because no man layeth it to heart .. NO ONE CARES NO NOT ONE.  Jer. 12:11. REPENT."

(Appellant's App. at 297-99; see also Supp. App. at 315-21; 324-31 (photographs of Eckles's signs and posted messages).)

attorney representing the Board of Review stating:

> As I am sure you are aware, your client has erected three large signs on his property relating to the assessment of his property, and the equity of property taxes in general. Please note that his signs appear to be in violation of the zoning ordinance of the City of Corydon and Iowa Code § 306C.
>
> The Corydon Zoning Ordinance governing signs, §16.070, clearly prohibits signs in residential districts except for those that fall into the enumerated exceptions, which your client's signs clearly do not. In addition, on information and belief, your client has not obtained the required permit from the Department of Transportation as mandated by Iowa Code §306C.18, which regulates billboards erected adjacent to Iowa highways (Mr. Eckles' residence is adjacent to Iowa Highway 14).
>
> Since your client's signs fail to comply with the Corydon Zoning Ordinances as well as the permit requirements of the Iowa Department of Transportation, you may want to advise Mr. Eckles to remove these signs as soon as possible. Failure to remove these signs could result in action from both the City of Corydon and the Iowa department of Transportation.

(Appellant's App. at 256.)

In response to this letter, Eckles painted at least two additional signs on his property. On August 10, 2000, he replied, via letter, to the law firm representing the Board of Review, reiterating his belief that his property was wrongfully over-valued and the City and County officials were corrupt.

On August 14, 2000, the firm representing the Board of Review sent Eckles's attorney another letter, opining that the signs were a public nuisance and their messages libelous. The letter stated that if the signs were not removed and their

messages publicly retracted, the firm would advise County officials to institute private actions against Eckles.

Shortly thereafter, Eckles dropped his pending appeal of the 1999 property value assessment. He then removed his deck, garage, sunroom, and other improvements he had made to the property, and painted five additional signs on or around the house.[4]

On October 18, 2000, the City sent Eckles a notice to abate nuisance, requiring Eckles to remove all refuse from his residential property, as well as "all signs, lettering, statements, verses, and objects whatsoever that refer to actions taken by state, county, and city officials in the legally constituted performance of their duties." (Appellant's App. at 260.) The notice stated that if Eckles did not adhere to the notice or request a hearing within ten days, the City would have the items removed and charge Eckles with the cost of removal.

Eckles then filed a complaint in federal district court for damages, injunctive relief, and declaratory relief against the City, the County, David Clayton,[5] Richard

---

[4]Eckles also posted messages on commercial property he owned. The commercial property is not at issue in this action.

[5]Mayor of Corydon.

Couchman,[6] Maurice Auxier,[7] Gene Gibbs,[8] Paul Overton,[9] and Kay Middlebrook.[10] The complaint alleged: 1) First Amendment violations by the City and Mayor Clayton, 2) First Amendment violations by the County, 3) Equal Protection violations by Couchman, Auxier, Gibbs, Overton, and Middlebrook; and 4) intentional infliction of emotional distress by Couchman, Auxier, Gibbs, and Overton.

The City assured Eckles that it would not seek to abate the nuisance during the pendency of the federal suit. On May 23, 2002, the City revoked the October 18, 2000, notice and issued a revised notice. The revised notice stated that the City, through Mayor Clayton, will consider "Mr. Eckles' statements to be a nuisance only insofar as those statements are objectively false. In particular, the Mayor finds that said statements constitute a nuisance insofar as they falsely suggest that any state, county, and city official, including without limitation the County Assessor, has violated any law." (Appellant's App. at 300.) The letter that accompanied the revocation of notice to abate and the revised notice requested that Eckles dismiss his suit against the City defendants. The letter also stated that the City would enforce the notice but agreed to abstain from enforcement in part if Eckles asserted that it violated his First Amendment rights.[11] (Appellant's App. at 301.)

---

[6]Member, Wayne County Board of Review.

[7]Member, Wayne County Board of Review.

[8]Member, Wayne County Board of Review.

[9]Wayne County Assessor who performed assessments in 1995 and early 1999.

[10]Wayne County Assessor who revalued Eckles's property following the State Equalization Order for increases in the assessed value of all residential property in Wayne County.

[11]"If Mr. Eckles asserts the current Notice to Abate some how violates his First Amendment rights, the City would again agree not to enforce the Notice **only** with respect to the First Amendment rights issue." (Appellant's App. at 301.)

-6-

The district court granted summary judgment to all of the defendants, finding that Eckles failed to allege a threat of imminent harm sufficient to establish standing. We hold that Eckles has standing in his suit against the City and Clayton, but not against the other defendants.

ANALYSIS

I. Standard of Review

We review de novo the district court's grant of summary judgment. Harmon v. City of Kansas City, Mo., 197 F.3d 321, 327 (8th Cir. 1999). Summary judgment is warranted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. In analyzing whether summary judgment is appropriate, we consider the facts in the "light most favorable to [the nonmoving party] and giving [that party] the benefit of all reasonable inferences supported by the record." Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 992-93 (8th Cir. 2003).

II. First Amendment Claims

The district court held that Eckles suffered no injury-in-fact and therefore lacked constitutional standing to pursue these claims in federal court. Article III, § 2, of the United States Constitution limits federal jurisdiction to actual cases and controversies. Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000). Standing is the "threshold question" in determining whether a federal court may hear a case. Id.

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury

is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000).

This case turns on whether Eckles has suffered an injury-in-fact. "The plaintiff must show that he or she 'sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate . . . .'" Steger, 228 F.3d at 892 (alteration in original) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)). In order to survive summary judgment, the plaintiff must make a "factual showing of perceptible harm." Lujan, 504 U.S. at 566.

Regarding charges that Eckles's constitutional rights were violated, he "must present more than '(a)llegations of a subjective 'chill'.' There must be a 'claim of specific present objective harm or a threat of specific future harm.'" Bigelow v. Virginia, 421 U.S. 809, 816-17, (1975) (finding the defendant had standing to challenge constitutionality of statute as over-broad after being convicted of violating the statute) (alteration in original) (quoting Laird v. Tatum, 408 U.S. 1, 13-14 (1972)).

A. The City

Eckles contends he was subjected to a threat of imminent harm by the City. He directs us to the notices of abatement issued by the City requiring him to remove signs and other items from his property. The district court conducted a brief analysis of the claim against the city, concluding that the notice to abate did not satisfy the test for injury-in-fact. We disagree.

On May 23, 2002, the City withdrew the October 18, 2000, notice to abate and issued the revised notice to abate.[12] The City has agreed to not enforce the revised notice, at least in part,[13] while this suit is pending. Thus, the City argues that there is no risk of imminent harm. We disagree. The City has stated that it will only abstain from enforcing the notice while the suit is pending. The revised notice is in effect, and if the suit is dismissed Eckles could expect the City to enforce the notice. Moreover, there is nothing to prevent the City from enforcing it immediately if it so chose. The threat of injury to Eckles is imminent and concrete. Eckles is clearly in imminent danger of suffering some consequence as a result of his allegedly protected activity.[14] The concrete and particular harm that Eckles will suffer is financial, and spelled out in the City's notice to abate. If Eckles fails to act in accordance with the notice, the City will remove the signs and other items and charge Eckles for the removal. In other words, Eckles stands to suffer direct, financial injury should he choose to ignore the demands of the notice. It is not necessary that Eckles wait until the City actually enforces the notice to bring suit challenging the City's actions as long as the those actions are imminent and not speculative. See Harmon, 197 F.3d at 326 (finding a plaintiff does not have to subject self to actual arrest and prosecution in order to challenge the constitutionality of statute). The City's planned actions are

---

[12]While standing is normally "[b]ased on the facts as they existed at the time the lawsuit was filed," Steger, 228 F.3d at 893, "[a] federal court bears the burden of examining standing at all stages of litigation," Harmon, 197 F.3d at 327. The October 18, 2000, notice to abate was in force at the time the lawsuit was filed and sufficient for standing purposes. It was withdrawn on the same day as the May 23, 2002, notice to abate was issued. Accordingly, we view the May 23, 2002, notice as merely a revision of the original that was in force at the time of the initial complaint.

[13]The City has agreed to not enforce the revised notice "only with respect to the First Amendment rights issue," while the appeal is pending. (Appellant's App. at 301.)

[14]We take no position as to whether Eckles will prevail on the merits of his First Amendment claim. The district court will decide this issue upon remand.

not merely speculative, the City has clearly outlined the actions it plans to take with regard to Eckles's property as soon as the federal case ends. The district court erred in holding the City's conduct did not subject Eckles to injury-in-fact, and thus, we reverse as to the City and Clayton. The question of whether the City's notice to abate violates Eckles's First Amendment rights shall be decided on remand.[15]

## B. The County

Eckles's First Amendment action against the County is based on letters he received on August 2 and 14, 2000, from the law firm representing the Board of Review. Eckles argues that these letters show a threat of imminent harm sufficient to satisfy the injury-in-fact requirement for standing. Unlike the notice to abate issued by the City, which outlines the specific actions the City <u>will</u> take, the August 2d letter merely states that "[f]ailure to remove these signs <u>could</u> result in action from the City of Corydon and the Iowa Department of Transportation." (Appellant's App. at 256 (emphasis added).) Similarly, the August 14th letter states that the firm would "<u>recommend</u>" that County officials pursue private actions against Eckles if he failed to remove the signs and retract their messages. (Appellant's App. at 259 (emphasis added).)

Eckles contends that the letters from the attorney for the Board of Review threatened prosecution and a civil lawsuit if he failed to remove the signs on his property, and therefore are sufficient to show injury-in-fact. The district court held that the comments in the August 2, 2000, letter are too general and speculative to confer standing, and that the threats were not concrete nor particularized, not actual

---

[15]In its brief the City argues that even if Eckles is found to have injury-in-fact, he lacks the third element of redressability, contending there is no available judicial act that will redress the injury. We disagree. If the district court finds the notice to abate unconstitutional, the injury may be redressed by an injunction barring enforcement of the notice.

-10-

nor imminent, but merely conjectural or hypothetical. Further, the district court recognized that the August 14, 2000, letter did not contain a threat of prosecution and that Eckles suffered no injury-in-fact based on either letter. Eckles has brought to bear no evidence that the County or Board of Review possessed the authority to enforce the City or State ordinances mentioned in its letters. We agree with the district court that these two letters are insufficient to establish that Eckles was threatened with harm by the County.

III. Equal Protection

Eckles next alleged that Couchman, Auxier, Gibbs, Overtown, and Middlebrook violated his Constitutional right to Equal Protection. He claimed that the increases in his assessed property value were arbitrary, unfair, disproportionate to other similarly situated property, and done solely to punish him because of his perceived homosexuality. His property value changed annually from 1995 to 1999 to reflect improvements to his house, but Eckles only appealed the 1999 valuation. He lost the appeal against the Board of Review and voluntarily dismissed his appeal of this board's decision.[16] Although this court cannot serve as a property tax valuation appeal board, see Schutterle v. United States, 74 F.3d 846, 848 (8th Cir. 1996), we may consider an Equal Protection claim based on an alleged purposeful over-valuation of property. To show that his right to Equal Protection has been violated by the defendants, Eckles must show that either the state or county taxing officials did not adhere to a uniform standard of valuation when assessing the value of his property, and that the standard was purposely not applied to his property. Additionally, "[t]he difference must be due to a purposeful discrimination, which may be evidenced, for example, by a systematic under-valuation of the property of some taxpayers and a systematic over-valuation of the property of others, so that the

[16]Prior to this suit, Eckles has not formally challenged the valuation increase due to the State Equalization Order.

practical effect of the official breach of law is the same as though the discrimination were incorporated in and proclaimed by the statute." Snowden v. Hughes, 321 U.S. 1, 9 (1944). The under-valuation does not need to be systematic so long as it is shown to be purposeful. Id. at 9-10. Eckles presented no evidence showing that the County or any of the named county officials purposely over-valued his property. Moreover, there is no evidence that the County or named County officials failed to abide by the assessment standard for the County in assessing Eckles's property. He claimed that his property was unfairly over-valued, but there appears to be no proof that the property value assessment is unfair. In fact, Eckles estimated in a 1998 interview that he might be able to sell his home for $100,000 to $125,000. Eckles lacks evidence that the county value assessments of his property were unfair and therefore cannot show that he has been treated unfairly. We affirm the district court's grant of summary judgment for the defendants on the charge of violation of Eckles's Equal Protection rights.

IV. Intentional Infliction of Emotional Distress

Finally, Eckles argues that defendants Couchman, Auxier, Gibbs, and Overton intentionally inflicted emotional distress upon him in various ways. Intentional infliction of emotional distress is a state tort claim. Under Iowa law:

> Four elements must be established to make a prima facie showing of intentional infliction of emotional distress: (1) outrageous conduct by the defendants; (2) the defendants' intentional causing, or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendants' outrageous conduct.

Marks v. Estate of Hartgerink, 528 N.W.2d 539, 546 (Iowa 1995).

We agree with the district court that Eckles has failed to establish the first element that defendants' conduct was outrageous. "To be outrageous, the conduct must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Vinson v. Linn-Mar Cmty. Sch. Dist., 360 N.W.2d 108, 118 (Iowa 1984)).

Eckles's claim is based primarily on his contention that County officials purposely over-valued his property because of his perceived homosexuality. As discussed above, Eckles has failed to show that his property was indeed unfairly over-valued. We must therefore assume that the property assessments were fair. It would be difficult to show that a fair property value assessment would be considered "atrocious" or "intolerable in a civilized community," and Eckles has failed to do so.

Next Eckles claims that the Board of Review's failure to reschedule the appeal hearing so that he could attend constitutes intentional infliction of emotional distress. Again we agree with the district court that this fails to meet the high mark of "outrageous" conduct required to pursue a claim of intentional infliction of emotional distress. This is especially true considering that Eckles was adequately represented at the hearing by his attorney.

Finally, Eckles argues that Middlebrook, in her capacity as Wayne County Assessor, improperly used a County computer to gather information about Eckles's criminal record and thereafter anonymously emailed the information to individuals in Corydon. We agree with the district court that there is insufficient evidence in the record to show, even if Eckles could demonstrate that Middlebrook did gather the information regarding Eckles's criminal record, that Middlebrook emailed the information to anyone. We affirm the district court's grant of summary judgment to appellees on the allegation of intentional infliction of emotional distress.

-13-

V. Conclusion

For the reasons stated above we reverse the district court's grant of summary judgment for the defendants City of Corydon and Clayton on Eckles's First Amendment claim and affirm in all other respects.

BYE, Circuit Judge, concurring in part and dissenting in part.

I agree with almost the entirety of the majority's opinion. I write separately only to note I would decide differently the question of whether Eckles has standing to pursue his First Amendment claim against the County. I discuss only the threshold question of whether Eckles presents a "case or controversy" within the meaning of Article III of the Constitution, therefore, the following discussion presumes without deciding Eckles's speech was protected by the First Amendment.

Plaintiff's First Amendment claim against the County arises from two letters written by the County's lawyer to Eckles's lawyer. The text of the first, dated August 2, 2000, reads in pertinent part:

> As I am sure you are aware, your client has erected three large signs on his property relating to the assessments of his property, and the equity of property taxes in general. Please note that his signs appear to be in violation of the zoning ordinance of the City of Corydon and Iowa Code §306C.
>
> The Corydon Zoning Ordinance governing signs, §16.070, clearly prohibits signs in residential districts except for those that fall into the enumerated exceptions, which your client's signs clearly do not. In addition, on information and belief, your client has not obtained the required permit from the Department of Transportation as mandated by Iowa Code §306C.18, which regulates billboards erected adjacent to

-14-

Iowa highways (Mr. Eckles' residence is adjacent to Iowa Highway 14).

> Since your client's signs fail to comply with Corydon Zoning Ordinances as well as the permit requirements of the Iowa Department of Transportation, you may want to advise Mr. Eckles to remove these signs as soon as possible. Failure to remove these signs could result in action from both the City of Corydon and the Iowa Department of Transportation.

Appellant's App. at 256. It appears the letter was a bluff, and one which failed to rattle Eckles's mettle. Eckles promptly replied with a letter which reads, in pertinent part:

> I find it curious that a person who does not represent the City or the Department of Transportation is writing to my lawyer suggesting another party (unrelated to this action) may take legal action against me for some apparent violation . . . .

> Also, perhaps you should check the Corydon Zoning Ordinance yourself, as it allows, "Any sign of a noncommercial nature when used to protect the health, safety, or welfare of the general public." That is precisely what my "signs" do.

> Finally, I've been doing some checking myself, and Iowa Code section 711 makes it a crime for a person to "threaten to cause some public official or officer or employee to take or withhold action." Which is precisely what your letter does. DON'T TREAD ON ME!!

Supplemental App. at 322.

The County ignored Eckles's advise to not "tread on" him and made another attempt at using intimidation to squelch his speech. The second letter from the

County's lawyers to Eckles's lawyer, written on August 14, 2000, and after the County received Eckles's defiant response to the first letter, reads in relevant part:

> *We . . . have advised the Wayne County Assessor that these signs constitute libel per se.* Libel is defined as, "a malicious publication, expressed either in print or writing or by signs and pictures, tending to injure the reputation of another or to expose him to public hatred, contempt or ridicule, or to injure him in the maintenance of his business." Vojak v. Jensen, 161 N.W.2d 100 (Iowa 1968). Libelous statements are actionable "per se" if the injured party is degraded, rendered odious, subjected to public hatred, contempt, or ridicule, injured in trade or business, or exposed to contempt in the deprivation of the benefits of public confidence. Brown v. First National Bank of Mason County, 193 N.W.2d 547 (Iowa 1972).

> Clearly, Mr. Eckles' statements constitute libel per se. Mr. Eckles has stated the Wayne County Assessor is a "thief" who "steals." Such statements are libel per se as they impugn the assessor's integrity, accuse her of dishonesty and directly damage her professional reputation. Amick v. Montross, 220 N.W. 51 (Iowa 1928).

> *At this time, we request that Mr. Eckles remove these statements from public view and request that Mr. Eckles place a statement of retraction apologizing for this inappropriate conduct.*

> It should also be noted that Mr. Eckles' sign stating that the Wayne County Assessor has not been willing to compromise is factually inaccurate. . . . Thus, this statement constitutes a complete misrepresentation of the factual circumstances surrounding Mr. Eckles' dispute.

> *It is also our opinion that all of Mr. Eckles' signs constitute a public nuisance.* Not only has Mr. Eckles impugned the integrity and character of Kay Middlebrook, the Wayne County Assessor, but has also damaged the ability of local realtors to consummate property transactions in

-16-

Corydon, Iowa. Thus, in our analysis, Mr. Eckles' statements are totally lacking in redeeming social value.

*We request an immediate response outlining how Mr. Eckles intends to remedy this unfortunate situation. If he does not intend to voluntarily remove these signs, we will recommend that the assessor file a libel action against Mr. Eckles to protect her reputation and good name.* Obviously, from a cost standpoint, it is in everyone's interest to resolve this matter short of additional litigation.

Appellant's App. at 258-259 (emphasis added).

The district court held Eckles had no standing because he could not show his speech was chilled and, with regard to the threat of future prosecution, the letters did not evince a threat of concrete, particularized, and actual or imminent harm. Addressing the second County letter, the district court opined, "Defendant Wayne County did not threaten to bring a civil lawsuit against Eckles," only that its lawyers would recommend the County assessor file a libel action against Eckles. In effect, the district court concluded the second letter threatened no action on behalf of the County.

The majority opinion affirms summary judgment on the ground Eckles proffered no evidence the County could enforce the City and State ordinances referenced in the first letter. It further concludes, without addressing the threats contained in the second letter, the two letters were insufficient to establish Eckles was threatened with harm by the County.

I agree the first letter alone does not establish the County threatened Eckles with concrete, particularized, and actual or imminent harm, if only because Eckles knew it to be a bluff. Eckles's defiant response to the County's first letter proves he knew the County had no authority to enforce either City zoning ordinances or State Department of Transportation signage regulations. And there is no evidence the first

-17-

letter chilled Eckles's speech. Therefore, the first letter alone can not serve as a basis for standing.

It is the second letter which gives me pause. The County doesn't appear to be bluffing any longer; its letter promises it will recommend the assessor file suit if Eckles doesn't remove his signs. Conversely, the letter implies the lawyers will not so recommend if Eckles accedes to the County's demand. While there continues to be no evidence Eckles's speech has been chilled by the second letter, in my view the evidence shows Eckles must now choose between chilling his speech and suffering imminent harm at the hand of the County in retribution for his presumably protected speech. To refresh:

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

Application of the second and third elements of the standing requirements is straightforward, so I address them cursorily. The letters show a direct causal relationship between Eckles's speech and the threatened harm of litigation. The harm will likely be addressed by the declaratory relief sought by Eckles establishing that his speech is protected. It is the first element, requiring an injury-in-fact that is concrete and particularized and actual or imminent, which necessitates further development.

To be sure, the threat is as particularized as a threat can be. The letter is directed to Eckles by name and threatens him because of his speech. Only two

-18-

nuances detract from the threatening nature of the letter; the threatened action would supposedly be taken by the assessor, not the County; and the letter promises to "advise" the assessor to sue, it does not promise she will sue.

The first argument, that the threatened action is to be taken by the assessor and not the County, I find unpersuasive. The County lawyer wrote the letter on behalf of the County; I doubt the County is in the practice of writing warning letters on behalf of every citizen against whom potentially libelous statements are made. The County threatens its agent, the assessor, will file a lawsuit against Eckles in retribution for Eckles's complaints about her actions in her official capacity as assessor. The signs do not even mention the assessor by name, instead they only refer to the "Wayne County Assessor." And it is the County's lawyer who is promised to advise the assessor to file suit. The libel action, then, would not be the purely individual action the County claims. This is the use of government resources to use litigation, or at least the threat of litigation, to stop Eckles's speech under the false banner of a private action. In sum, it is the County which is forcing Eckles to choose between keeping his signs and being sued.

On the second point, although the letter merely threatens County lawyers will "advise" the assessor to sue Eckles, it reads to me as a thinly veiled threat. I find it hard to believe the County, having gone to the trouble and expense of having its lawyers draft the first threatening letter, and which has taken off the gloves in its attempts to stops Eckles's speech, would go to the trouble of merely notifying Eckles its assessor may receive legal advice on pursuing a private action. It is a less than subtle threat, and in my view, a sufficiently credible threat to meet the temporal and concreteness requirements for injury-in-fact.

I draw support for my position from the Supreme Court's opinion in <u>Lujan</u>, which says:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.

Lujan, 504 U.S. at 561-62. Standing is but a threshold question intended to ensure there is a live case or controversy establishing federal jurisdiction. Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000). Here, Eckles is the object of Wayne County's actions, and I am satisfied he has a case or controversy against the County. The federal courts should not shirk from deciding whether Eckles's speech was protected and whether the County violated that right. For these reasons, I respectfully dissent in part.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-20-