# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1795

_____

Saint Paul Area Chamber of
Commerce, a Minnesota nonprofit
corporation; Burnsville Chamber of
Commerce, a Minnesota nonprofit
corporation; Greater Mankato Chamber
of Commerce, a Minnesota nonprofit
corporation,

      Appellants,

      v.

Susan Gaertner, in her official
capacity as County Attorney for
Ramsey County, Minnesota; James
Backstrom, in his official capacity
as County Attorney for Dakota County,
Minnesota; Ross Arneson, in his
official capacity as County Attorney
for Blue Earth County, Minnesota,

      Appellees.

\* Appeal from the United States
\* District Court for the
\* District of Minnesota.

_____

Submitted: December 15, 2005
Filed: February 27, 2006

_____

Before BYE, BOWMAN, and GRUENDER, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Appellants, three chambers of commerce operating as nonprofit corporations in Minnesota, appeal the dismissal of their suit challenging certain provisions of the Minnesota Fair Campaign Practices Act that regulate corporate contributions to candidates for political office. Appellants seek a declaration that Minnesota Statutes §§ 211B.01, subd. 3, and 211B.15, subds. 1(2), 2 (2004) (collectively, "the Minnesota Statutes"), are unconstitutional and preempted by the Federal Election Campaign Act, 2 U.S.C. §§ 431–55 (2000) ("FECA"), to the extent that the Minnesota Statutes pertain to federal elections. Appellants also seek injunctive relief prohibiting Appellees, three county attorneys, from enforcing the Minnesota Statutes. The District Court dismissed the suit for lack of subject matter jurisdiction on the ground that Appellants lacked standing. Concluding that Appellants have standing, we reverse.

Appellants seek to use their general treasury funds to engage in speech that advocates the election of candidates for federal office.[1] Specifically, Appellants propose (1) "[e]ndorsing candidates for the United States Senate or the House of Representatives"; (2) "[s]ending letters to [Appellants'] respective members informing them of endorsements and encouraging members to support the endorsed candidates for federal elective office"; (3) "[i]nviting candidates for federal office to attend [Appellants'] respective member events and/or speak at said member events"; (4) "[s]ending letters to [Appellants'] respective members informing them of the United States Chamber of Commerce's endorsement of candidates for federal office"; (5) "[i]nviting [Appellants'] respective members to attend events being held on behalf of endorsed candidates"; and (6) "[s]ending email or other correspondence to [Appellants'] respective members informing them of federal candidate events." Complaint at 5. Appellants assert that these activities are expressly permitted by FECA and its implementing regulations. See, e.g., 11 C.F.R. §§ 114.3, 114.5, 114.7(h) (2005). The Minnesota Statutes, however, prohibit corporations such as

_____

[1]We accept as true all material allegations in the complaint and construe the facts in the light most favorable to the plaintiffs below, here Appellants. See Shain v. Veneman, 376 F.3d 815, 817 (8th Cir. 2004), cert. denied, 125 S. Ct. 973 (2005).

Appellants from making any contributions, directly or indirectly, to promote or defeat the candidacy of an individual for nomination, election, or appointment to political office. See Minn. Stat. §§ 211B.01, subd. 3; 211B.15, subds. 1(2), 2 (2004). A corporation that violates the Minnesota law may be dissolved and fined up to $40,000, id. § 211B.15, subd. 7, and an individual acting on behalf of a corporation who violates the law may be imprisoned for up to five years and fined up to $20,000, id. § 211B.15, subd. 6.

Appellants have refrained from making political contributions because they "fear penalty and prosecution" under the Minnesota Statutes. Complaint at 8. Appellants aver that their First Amendment rights to engage in electioneering and campaign activities have been chilled by the Minnesota Statutes. They brought suit, seeking a declaration that the Minnesota Statutes are unconstitutional and preempted by FECA to the extent that they relate to federal elections.

A magistrate judge recommended that the case be dismissed because Appellants had suffered no justiciable injury that would give them standing. The magistrate judge concluded that because Appellants did not allege that Appellees had ever threatened to enforce the Minnesota Statutes, Appellants' fear of prosecution "can be classified as 'imaginary and speculative.'" Report and Recommendation at 10 (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). The magistrate judge further concluded that Appellants failed to plead adequately the specific political action that the Minnesota Statutes allegedly prevented them from taking, thus indicating "that no controversy existed." Id. at 11. The District Court adopted the magistrate judge's report and recommendation and dismissed the suit for lack of standing.

We review de novo the District Court's standing determination. See Shain, 376 F.3d at 817. The standing requirement for federal court jurisdiction stems from the admonition in Article III of the Constitution that federal courts are empowered to

decide only "cases" and "controversies." U.S. Const. art. III, § 2, cl.1. To satisfy the Article III requirement, a party that challenges a statute in federal court must demonstrate that it has suffered an "injury in fact," i.e., "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement."[2] Babbitt, 442 U.S. at 298. A party, however, need not expose itself to arrest or prosecution in order to challenge a criminal statute. "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" Id. (quoting Doe v. Bolton, 410 U.S. 179, 188 (1973)); see also Ark. Right to Life State Political Action Comm. v. Butler, 146 F.3d 558, 560 (8th Cir. 1998) ("Plaintiffs, however, are not required to expose themselves to arrest or prosecution under a criminal statute in order to challenge a statute in federal court."). A plaintiff who alleges a threat of prosecution that "is not imaginary or wholly speculative" has standing to challenge the statute. Babbitt, 442 U.S. at 302. When a statute is challenged by a party who is a target or object of the statute's prohibitions, "there is ordinarily little question that the [statute] has caused him injury." Minn. Citizens Concerned for Life v. Fed. Election Comm'n, 113 F.3d 129, 131 (8th Cir. 1997) (internal quotation marks and citation omitted).

Appellants' complaint sufficiently alleges that Appellants have suffered injury due to the Minnesota Statutes. Appellants asserted six specific political expenditures that they would like to make and a "fear that Defendant County Attorneys will initiate criminal prosecution against them and their corporate officers, employees, and agents" should they do so. Complaint at 4. Although Appellants have neither violated the Minnesota Statutes nor been threatened by Appellees with prosecution should they

---

[2]A plaintiff also must demonstrate that the injury can be traced to the defendants' allegedly unlawful conduct and is likely to be redressed by a favorable decision from the court. Allen v. Wright, 468 U.S. 737, 751 (1984). These two elements are unquestionably satisfied here.

-4-

engage in the proposed activity, Appellants' fear of prosecution is not imaginary or speculative. The Minnesota Statutes, on their face, prohibit corporate political expenditures of money or service for the purpose of promoting or defeating a candidate for federal office, and the penalty provisions apply both to the corporations and their agents. While Appellees assert that they have never prosecuted anyone under the Minnesota Statutes or "made any public statements threatening to do so," Brief of Appellees at 9, Appellees have not disavowed an intent to enforce the statutes in the future.[3] See United Food & Commercial Workers Int'l Union v. IBP, Inc., 857 F.2d 422, 429 (8th Cir. 1988) (holding that representation by state officials that they have no "present plan" to enforce a statute does not divest plaintiffs of standing to challenge the statute because "the state's position could well change"). Indeed, as counsel conceded at oral argument, Appellees have taken an oath to enforce Minnesota law. Moreover, § 211B.15, subd. 2, is not a dormant law; it recently was enforced by a county attorney in another county. See State v. Eibensteiner, 690 N.W.2d 140 (Minn. Ct. App. 2004) (discussing Mower County Attorney's prosecution of insurance company and insurance company officers who made corporate contributions to a state political party for the purpose of defeating a candidate for Minnesota governor). Appellants "are thus not without some reason in fearing prosecution" should they make the political expenditures that they propose. Babbitt, 442 U.S. at 302 (holding that fear of prosecution was not imaginary or speculative, even though the challenged criminal penalty provision had never been applied to plaintiffs' proposed conduct, where statute on its face proscribed the proposed conduct

---

[3]Appellees assert that SOB, Inc. v. County of Benton, 317 F.3d 856, 865 (8th Cir.), cert. denied, 540 U.S. 820 (2003), in which the county attorney represented that the county did not intend to enforce the challenged statute "now or in the future," mandates a holding that Appellants lack standing. Appellees' reliance on SOB is misplaced for two reasons. First, the Court in SOB mentioned the county attorney's promise in evaluating the constitutionality of the statute on the merits, not in addressing the plaintiffs' standing. Second, unlike the county attorney in SOB, Appellees have not suggested that they (or their successors) will not enforce the Minnesota Statutes in the future.

and where "the State has not disavowed any intention of invoking the criminal penalty provision"); see also Butler, 146 F.3d at 560 (holding that plaintiffs had standing to challenge the constitutionality of various provisions in Arkansas's campaign finance law even though plaintiffs had neither violated the law nor been directly threatened with prosecution under the law); N.H. Right to Life Political Action Comm. v. Gardner, 99 F.3d 8, 12–15 (1st Cir. 1996) (determining that political action committee had standing to challenge New Hampshire campaign finance limits even though New Hampshire's Attorney General had informed plaintiff that the state would not enforce the law).

In concluding that Appellants could not demonstrate a credible threat of prosecution sufficient to establish standing, the District Court relied upon Poe v. Ullman, 367 U.S. 497 (1961). In Poe, the Supreme Court ruled that "the mere existence of a state penal statute" is insufficient to support standing "if real threat of enforcement is wanting." Id. at 507. The Court found that the Connecticut anti-contraceptive laws being challenged were "uniformly and without exception unenforced" during the previous eighty years, thus demonstrating the state's "undeviating policy of nullification" of those laws. Id. at 502, 508. The Court concluded that the statutes were simply "harmless, empty shadows" and that, "under the circumstances," finding a threat of injury to plaintiffs "would be to close our eyes to reality." Id. at 508–09.

We find this case easily distinguished from Poe. Unlike the moribund statute in Poe, there is no indication that the Minnesota Statutes have fallen into desuetude. The Minnesota Statutes were enacted in 1988, and the threat of prosecution is greater under a statute enacted relatively recently. See Doe, 410 U.S. at 188; Gardner, 99 F.3d at 15 ("[W]hen dealing with pre-enforcement challenges to recently enacted (or, at least, non-moribund) statutes that facially restrict expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence."). Given the relatively short time that

has passed since enactment, we certainly cannot say that Minnesota has established a state policy of not enforcing the Minnesota Statutes. This is especially true in light of the recent enforcement action brought in Eibensteiner. This case is much closer to Doe in which the Supreme Court recognized the right of physicians to challenge a recently enacted criminal abortion statute "despite the fact that the record does not disclose that any of [the physicians] has been prosecuted, or threatened with prosecution." 410 U.S. at 188. Like the plaintiffs in Doe, Appellants' fear of prosecution under a viable state statute is objectively reasonable.

We further recognize that, as distinguished from the claims in Poe, Appellants allege that the challenged statutes violate their First Amendment rights to free speech. Appellants assert that they have been forced to modify their speech and behavior to comply with the Minnesota Statutes. As noted in Virginia v. American Booksellers Ass'n, "the alleged danger of [a statute implicating First Amendment rights] is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution." 484 U.S. 383, 393 (1988); see also Majors v. Abell, 317 F.3d 719, 721 (7th Cir. 2003) ("A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him; the threat is latent in the existence of the statute.") (citations omitted). When a party brings a pre-enforcement challenge to a statute that provides for criminal penalties and claims that the statute chills the exercising of its right to free expression, the chilling effect alone may constitute injury. Gardner, 99 F.3d at 13. Thus, in Minnesota Citizens we held that a plaintiff "suffers Article III injury when it must either make significant changes to its operations to obey the regulation, or risk a criminal enforcement action by disobeying the regulation." 113 F.3d at 131. The chilling of Appellants' First Amendment rights is also an injury that supports their standing to bring suit.[4]

---

[4]Appellees place great weight on Eckles v. City of Corydon, 341 F.3d 762 (8th Cir. 2003), but that case is not germane to our decision. The Eckles Court held that the plaintiff lacked standing to sue a county that threatened the plaintiff with a private

We also conclude that the District Court erred in holding that Appellants' case was not ripe for review on the ground that Appellants failed to allege sufficient facts with respect to their proposed political activity. The District Court relied on Renne v. Geary, 501 U.S. 312, 321–22 (1991), in which the Supreme Court held that the plaintiffs' claims were not ripe because the plaintiffs failed to specify the nature of candidate endorsements and the form of candidate support that the plaintiffs would make if not prohibited by the challenged statute. We distinguish Renne, as we did in Butler, 146 F.3d at 560, because "the plaintiffs here have alleged a specific intent to pursue conduct in violation of the challenged statute." Appellants' complaint specified that Appellants intend to use their resources to support candidates for the United States Senate and United States House of Representatives. In addition to specifying their intention to "us[e] their general treasury funds, to the extent currently permitted by federal law, in support of one or more candidates for federal office," the complaint listed specific other ways in which Appellants would support such candidates, including inviting candidates to speak at member events and sending letters to members informing them of candidates endorsed by the United States Chamber of Commerce and encouraging member support of endorsed candidates. Renne thus is readily distinguished from this case, and we hold that the allegations in the complaint are sufficient to establish a controversy ripe for determination. See Butler, 146 F.3d at 560 (determining that allegations that plaintiffs "would like to make contributions in excess of $100 to the candidates enumerated in Arkansas [code section] and $300 to the candidates enumerated in Arkansas [code section]" established standing).

---

libel action and that informed the plaintiff that his actions could result in prosecution by the city or state (not the county itself). Id. at 768–69. In contrast, Appellants fear prosecution under criminal statutes and have brought suit against those with the authority to enforce them. Because the facts in this case are much more similar to those in Butler, Minnesota Citizens, and Gardner, we look to those cases for guidance.

Our holding promotes good public policy by breeding respect for the law. Like the Fourth Circuit, we "encourage a person aggrieved by laws he considers unconstitutional to seek a declaratory judgment against the arm of the state entrusted with the state's enforcement power, all the while complying with the challenged law, rather than to deliberately break the law and take his chances in the ensuing suit or prosecution." Mobil Oil Corp. v. Attorney Gen., 940 F.2d 73, 75 (4th Cir. 1991); see also Ariz. Right to Life Political Action Comm. v. Bayless, 320 F.3d 1002, 1007 (9th Cir. 2003) ("[W]e observe that it would turn respect for the law on its head for us to conclude that [plaintiff] lacks standing to challenge the provision merely because [plaintiff] chose to comply with the statute and challenge its constitutionality, rather than to violate the law and await an enforcement action.").

Concluding that Appellants' complaint presents a justiciable case or controversy, we reverse the judgment of the District Court and remand the case for further proceedings consistent with this opinion.[5]

BYE, Circuit Judge, concurring in part and dissenting in part.

While I agree the Appellants have demonstrated standing, I disagree as to the conclusion each of Appellants' proposed activities is ripe for judicial review. Instead, I observe the Appellants' proposed activities which rely upon a candidate endorsement are not yet ready for review as Appellants have not identified any particular candidate they wish to endorse, while Appellants' proposed activities not relying on such an endorsement are ripe for review.

The majority relies upon Arkansas Right to Life State Political Action Committee v. Butler, 146 F.3d 558 (8th Cir. 1998), for the proposition the Appellants

---

[5]We do not address Appellees' arguments that injunctive relief is inappropriate and that the federal courts should decline to hear Appellants' claims on the ground of federal-state comity. These arguments were not addressed by the District Court and are more appropriately heard by the District Court in the first instance.

claimed "a specific intent to pursue conduct in violation of the challenged statute." Ante at 8-9 (quoting Butler, 146 F.3d at 560). The plaintiffs in Butler contended they "would like to make contributions in excess of $100 to the candidates enumerated in Arkansas Code § 7-6-203(b)(1) and $300 to the candidates enumerated in Arkansas Code § 7-6-203(b)(2)." Id. The statute at issue in Butler specifically prohibited certain contributions to candidates. The plaintiffs alleged a present intent to contribute funds to candidates without suggesting the contributions relied upon any endorsement of the candidates. The Court concluded the plaintiffs in Butler were unlike those in Renne v. Geary, 501 U.S. 312, 322 (1991), because the Butler plaintiffs alleged a specific intent to violate the statute.

The majority here concludes the Appellants allege a specific intent to violate the statute and therefore their claim is ripe for review under Butler. A closer analysis of the case law, however, illuminates the error in the majority's reasoning. The statute at issue in Renne specifically prohibited a candidate seeking election for a nonpartisan position from including a political party endorsement in her candidate statement published in the information pamphlet distributed to voters. In Renne, the plaintiffs alleged a "'desire . . . to publicize [party] endorsements' and the 'desire [of all respondents] to read endorsements' in the voter pamphlets." Renne, 501 U.S. at 335 (Marshall, J., dissenting). In Renne, the plaintiffs made their intention to endorse candidates clear. Id. at 339-40 (Marshall, J., dissenting). Like the plaintiffs in Butler, the plaintiffs in Renne alleged a specific intent to violate the statute. However, the plaintiffs' allegations in Renne differed from those in Butler in one significant respect: the Renne plaintiffs did not allege an interest to endorse all candidates or even candidates from a particular political party. Instead, they expressed an interest in endorsing particular candidates, but did not provide names for those candidates. In contrast, the Butler plaintiffs expressed an interest in contributing to enumerated candidates, whomever they might be. Although the candidate names were not alleged in Butler, the Butler plaintiffs did not suggest their contributions depended upon any particularized endorsement decision. As a result, the Butler plaintiffs sufficiently

specified their intent to violate the law, while the <u>Renne</u> plaintiffs did not. The <u>Renne</u> plaintiffs' failure to indicate any particular candidate whom they would endorse was fatal to their claim. <u>Id.</u> at 321.

The stated intentions of the plaintiffs in <u>Renne</u> do not substantively differ from the intentions stated by Appellants in this case. Appellants do not know which candidates they may endorse because they lack sufficient information about them. Accordingly, I believe this case parallels <u>Renne</u> more closely than <u>Butler</u> with regard to the proposed activities relying upon a candidate endorsement. Appellants seek to endorse and support candidates where such endorsement and support is prohibited by statute. In this case, the candidates for federal office have not been announced, and although Appellants have expressed an interest in endorsing candidates for federal office, they have not expressed an interest in endorsing any particular candidate.

Appellants may decide not to endorse any particular candidate, in which case a number of Appellants' proposed activities would never come to fruition. I do not believe Appellants must actually endorse a candidate in violation of the statute to achieve standing, but for ripeness purposes, I believe Appellants must indicate which candidate they would endorse absent the legislation to make their endorsement-related claims ripe for review. Absent such a specific intended endorsement, Appellants have not demonstrated their speech has been chilled by the regulation.

I therefore agree with the Supreme Court in <u>Renne</u> that First Amendment challenges "have fundamental and far-reaching import. For that very reason, we cannot decide the case based upon the amorphous and ill-defined factual record presented to us." <u>Id.</u> at 324; <u>see also</u> <u>State of Mo. ex rel. Mo. Hwy. & Transp. Comm'n v. Cuffley</u> , 112 F.3d 1332, 1337 (8th Cir. 1997).

While I believe Appellants' endorsement-based claims are not ripe for review, I agree with the majority as to Appellants' claims which do not rely upon the Appellants endorsing a candidate. Specifically, I believe Appellants' claims they would "[i]nvit[e] candidates for federal office to attend [Appellants'] respective member events and/or speak at said member events" and "[s]end[] email or other correspondence to [Appellants'] respective members informing them of federal candidate events" parallel the claims made by the plaintiffs in Butler. Accordingly, I agree with the majority those claims are ready for review and would remand them to the district court for further proceedings consistent with this opinion.

_____

-12-