# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3630

_____

| | | |
|---|---|---|
| Jill Harmon and John Kean, | * | |
| | * | |
| Appellees, | * | |
| | * | |
| v. | * | Appeal from the United States District |
| | * | Court for the Western District of |
| City of Kansas City, Missouri, | * | Missouri |
| | * | |
| Appellant. | * | |

_____

Submitted: April 20, 1999
Filed: October 20, 1999

_____

Before RICHARD S. ARNOLD and WOLLMAN,[1] Circuit Judges, and
MAGNUSON,[2] District Judge.

_____


MAGNUSON, District Judge.

[1]The Honorable Roger L. Wollman succeeded the Honorable Pasco M. Bowman as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the end of the day on April 23, 1999.

[2]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

Appellant City of Kansas City, Missouri ("the City") appeals an order by the District Court declaring ordinance number 50-2 of the Kansas City Municipal Code ("section 50-2") unconstitutional on its face and as applied to Appellees John Kean and Jill Harmon. Section 50-2 regulates the sale and advertisement of certain products on Kansas City streets and sidewalks. We conclude that the District court properly refused to abstain from this case and also properly ruled that Appellee Kean has standing to assert an as applied challenge for damages. However, because Kean and Harmon now lack standing to seek injunctive relief, and because the District court need not have determined the constitutionality of section 50-2 on its face, we affirm in part and vacate in part the decision of the District Court.

I.

Background

Since 1996, Appellees John Kean and Jill Harmon, also known as the "Butterflies," have actively sought to spread their beliefs regarding personal, social, and political issues on the public sidewalks in Kansas City. Their message, in part, has been delivered by the distribution of "symbolic expressions" regarding the homeless and the hungry, including anklets, bracelets, and wood products. In addition, they distribute pamphlets with pictures to address topics such as equality, hunger, prevention of and recovery from abuse, healing, spiritual injuries, and love. None of these items contain words. Although Appellees do not sell these items, they do request a donation for them. The money raised from donations is used to create more pamphlets and jewelry and to purchase food for the hungry.

While sharing their message, Appellees have been harassed on multiple occasions by the Kansas City Police Department. Twice, police helicopters flew so low over Appellees that they could feel the wind from the helicopter's blades. Appellees also experienced close police motorcycle ride-bys and a police car stakeout. Further, Kean had been threatened with arrest by the Kansas City Police Department

2–

four times, including twice for alleged violations of section 50-2. On June 7, 1996, Kean was arrested for violating a Kansas City ordinance which placed an 11:00 P.M. curfew on the distribution of leaflets in the Westport area of Kansas City.[3] Appellees were also arrested for blocking a sidewalk by causing a crowd to gather, in violation of another section of the municipal code.

On July 19, 1996, Harmon and Kean had spread out their blankets and trinkets on the corner of 11th and Main Street in Kansas City, when two police officers approached them. The officers told Appellees to leave the area or they would be arrested. In the midst of this encounter, a woman in the crowd approached Harmon and inquired as to the price of a bracelet. Harmon requested a seven-dollar donation. At that point, an officer informed Harmon that she had violated section 50-2 of the Kansas City Code by attempting to sell an item on a city sidewalk and issued her a citation. In toto, section 50-2 reads:

> No person shall sell, solicit, or offer for sale or hawk or peddle any article, thing, or personal service, except newspapers and magazines, in or upon any street, sidewalk, alley, public way, public building, public park or place in the city; provided that nothing contained in this section shall be construed to prohibit the sale of articles from traveling florists or grocers; hucksters, as defined in Section 40-108; food or beverage wagons, including any street vendor of food regulated by the Health Department as a food vendor selling food in or upon any street, sidewalk, alley, public way, building or place not controlled by the Board of Parks and Recreation Commissioners; or vendors of milk and dairy products and hot tamales; or producers of farm products as defined in RSMo 71.630; or businesses

---

[3]Kean and Harmon filed an action in federal court contesting the validity of that statute under the First and Fourteenth Amendments. The District Court found the ordinance unconstitutional.

which are wholly located on private property but which sell articles to persons on the public sidewalk; provided, further, this section shall not be deemed to apply to the sale of any personal property at any established place in any public building, public park or public place by express authority of the government agency in control thereof.

Kansas City Mun. Code 50-2. Thereafter, Appellees left the area, and because of fear of prosecution, restricted their activities to the Westport area.

On April 7, 1997, Appellees filed a pro se action in District Court against the City seeking damages and declaratory and injunctive relief on the basis that section 50-2 is facially unconstitutional and unconstitutional as applied under the First and Fourteenth Amendments. On May 13, 1997, the City filed a motion to dismiss or to stay the proceedings in the federal case. The City first asserted that Younger abstention was proper because a case was pending against Harmon in municipal court for an alleged violation of section 50-2 in which Harmon had filed a motion challenging the constitutionality of the ordinance.[4] Secondly, the City argued that Kean lacked standing to challenge the constitutionality of the ordinance because he had neither been arrested nor charged with violating section 50-2.

The District Court applied Younger abstention as to Harmon and therefore, dismissed her from the federal suit without prejudice. As to Kean, the court refused to abstain from the case and further, found that he possessed standing to challenge the ordinance despite the fact that he had not been arrested or given a citation. The District Court proceeded to hold that section 50-2 was unconstitutional as applied to Kean and on its face and therefore, granted summary judgment in his favor. Subsequent to this ruling, the City dismissed its municipal case against Harmon. On May 26, 1998, the

---

[4]The municipal court charge was filed against Harmon on the same day as Harmon received the citation.

District Court granted Harmon's motion for reconsideration and reinstated her claim, extending the scope of the April 2 summary judgment order to Harmon based on its belief that both Appellees engaged in the same activity at the same time.

On June 11, 1998, the District Court held a bench trial to determine damages for Harmon and Kean, resulting in an award of $25,000 to Harmon and $10,000 to Kean. The court later awarded a total of $73,576.25 in attorney's fees. Moreover, the court permanently enjoined the City from enforcing section 50-2. The City now appeals the District Court's decision as to the constitutionality of section 50-2 and the monetary and injunctive relief issued pursuant thereto.

II.

Abstention

The District Court's initial application of the Younger abstention doctrine to Harmon's suit is not disputed. However, the City does challenge the court's refusal to abstain from Kean's suit and its later reinstatement of Harmon's case, claiming that such action interfered with an ongoing state proceeding. In Younger v. Harris, 401 U.S. 37, 43-44 (1971), the Supreme Court advanced the position that federal courts should refrain from interfering with pending state judicial proceedings absent extraordinary circumstances. Under Younger, abstention is warranted if the action complained of constitutes the basis of an ongoing state judicial proceeding, the proceedings implicate important state interests, and an adequate opportunity exists in the state proceedings to raise constitutional challenges. See Fuller v. Ulland, 76 F.3d 957, 959 (8th Cir. 1996).

The District Court did not abstain from Kean's suit because it found that the actions complained of did not constitute the basis of an ongoing state judicial proceeding. Simply put, Kean was not charged in municipal court. The City argues, however, that by proceeding with Kean's case in federal court, the District Court might

have interfered with Harmon's case in state court because the "municipal court could not continue with a prosecution under an ordinance that a federal court has held to be unconstitutional." (Appellant's Br. at 12.) But the mere fact that a co-plaintiff has been charged under a statute that is being challenged as unconstitutional does not amount to federal intervention. See Womens Servs., P.C. v. Douglas, 653 F.2d 355, 356 (8th Cir. 1981) (citing Younger, 401 U.S. at 43-54.) Accordingly, we conclude that the District court acted within its discretion in refusing to abstain from Harmon's case. See Fuller, 76 F.3d at 959 (reviewing a district court's decision on Younger abstention under an abuse of discretion standard.)

The City further argues that the District Court was required to abstain because Kean's rights were intertwined with Harmon's rights; therefore, proceeding with the federal case would interfere with the municipal court's ruling.[5] Admittedly, in extraordinary circumstances where the federal plaintiff is actually attempting to interfere with the state lawsuit, a showing of intertwining interests may warrant abstention. See Hicks v. Miranda, 422 U.S. 332, 348-49 (1975); Stivers v. Minnesota, 575 F.2d 200, 202-03 (8th Cir. 1978). But those extraordinary circumstances are not present here. Kean did not take any action (such as seeking a stay of the state court proceedings) which would interfere with the state proceedings against Harmon. See Womens Servs., 653 F.2d at 356-57 (noting that "a crucial aspect of this case is that

---

[5]Appellees contend that because this issue was not raised at the District Court level, the City has waived its right to pursue it here. See Von Kerssenbrock-Praschma v. Saunders, 121 F.3d 373, 375-76 (8th Cir. 1997). In response, the City points to the District Court's statement that "[r]egardless of [Kean's] relationship to Harmon, Kean's right to proceed is not affected by Harmon's ongoing municipal proceedings." (Appellee's Brief at 12) (citing Womens Servs., 653 F.2d at 358-59). This statement alone is insufficient to show that the City previously advanced an intertwining interest argument. However, the court's reliance on Womens Servs., which predicates its abstention decision on an intertwining interest analysis, convinces us that the trial court considered this issue and accordingly, we will consider it on appeal.

the federal plaintiffs did not seek to enjoin the . . . criminal proceeding against [their co-plaintiff]").

As to Harmon, the District Court reinstated her as a plaintiff in the federal case only after the City dismissed its claims against her in municipal court.  Thus, Harmon's federal suit could not interfere with a state court proceeding because the state proceeding had ceased.  See In re Otter Tail Power Co., 116 F.3d 1207, 1215 (8th Cir. 1997) (summarizing that Younger abstention is inapplicable in the absence of ongoing state proceedings).  It is clear from the foregoing that the City could not invoke the Younger bar in these circumstances.

### III.
### Standing

The District Court determined that even though Kean had not been arrested or prosecuted for violating section 50-2, he maintained standing because Kansas City police officials had threatened and harassed him numerous times , using section 50-2 as their justification.  In response, the City continues to argue that Kean lacks standing to pursue an as applied challenge because he was not arrested under that ordinance .  The City also now urges that Kean does not have standing because his activities did not violate the terms of section 50-2.

We review for clear error whether Kean possesses Article III standing to assert an as applied challenge.  See United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994); Nor-West Cable Communications Partnership v. City of St. Paul, 924 F.2d 741, 746-47 (8th Cir. 1991). Standing to challenge a statute or ordinance as applied is present when the challenger has experienced a direct injury or will soon sustain a direct injury redressable by the court.  See Alexander v. City of Minneapolis, 928 F.2d 278, 281-82 (8th Cir. 1991) (citing Valley Forge Christian College v. Americans United for

Separation of Church & State, Inc., 454 U.S. 464, 472 (1982)); Postscript Enter., Inc. v. Westfall, 771 F.2d 1132, 1135-36 (8th Cir. 1985). "[I]t is not necessary that [the plaintiff] first expose himself . . . to actual arrest or prosecution to be entitled to challenge a statute that he . . . claims deters the exercise of his . . . constitutional rights." Id. at 1135 (quoting Steffel v. Thompson, 415 U.S. 452, 459 (1974)).

It is clear that in the present case, Kean had proper standing to raise a question concerning the constitutionality of the application of section 50-2. The alleged threats of prosecution on which the District Court based its standing conclusion were not "imaginary or speculative." Younger, 401 U.S. at 42. While sharing his message with others, Kean was involved in multiple incidents of harassment by the Kansas City Police Department. Despite the fact that Kean has never been arrested or charged with violating section 50-2, we conclude that Kean adequately showed a genuine threat that the ordinance would be enforced against him and his activities in the future. Accordingly, Kean had standing to pursue his claim for damages in District Court.[6]

---

[6]The City also now argues that the responsibility of enforcing the ordinance lies with the police officer who served Harmon a citation. The legal separation of Kansas City and the Kansas City Police Department, however, does little to weaken Kean's claim to standing under these circumstances. Under Missouri law, the Board of Police Commissioners exerts exclusive control over the Kansas City Police Department. See Mo. Rev. Stat. § 84.460; see generally Mo. Rev. Stat. §§ 84.350 et seq. As the District Court noted, "the City is not liable for wrongs committed by the police." See Crigler v. City of St. Louis, 767 F. Supp. 197, 199 (E.D. Mo. 1991); Hasenyager v. Board of Police Comm'rs of Kansas City, 606 S.W.2d 468, 472 (Mo. Ct. App. 1980). However, the District Court also correctly asserted that the City is liable for the "predictable and proximate" results of passing the Ordinance. Although the specific tactics used by the Police Department to enforce section 50-2 cannot be attributed to the City, the mere attempt to enforce 50-2 can. Because it was on this limited basis that the District Court awarded Kean damages against the City, Kean had standing to seek damages.

Notwithstanding the fact that Harmon and Kean had standing to pursue a claim for damages, neither one now enjoys standing to seek injunctive relief. A federal court bears the burden of examining standing at all stages of litigation, even if the parties do not raise the issue themselves. See Valley Forge Christian College, 454 U.S. at 472. In light of the City's admission that it now "agrees that Kean's activities consisting of distributing his pamphlets, soliciting donations, and conveying his message through talking to passersby are fully protected under the constitution" and that "[t]hese activities are not prohibited under section 50-2" (Appellant's Br. at 19), any previous substantial controversy between the parties has effectively dissipated. The mere fact that injurious activity took place in the past does nothing to convey standing to seek injunctive relief against future constitutional violations. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." Steel Co. v. Citizens for a Better Environment, 118 S. Ct. 1003, 1019 (1998) (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)). "The fact of past damages, 'while presumably affording [the plaintiff] standing to claim damages . . . does nothing to establish a real, immediate threat that he would again' suffer similar injury in the future." Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 210-11 (quoting Los Angeles v. Lyons, 461 U.S. 95, 105 (1983)). As a result, Appellees will not benefit from the injunctive relief the District Court ordered. Accordingly, the portion of the District Court's order which enjoined the City from enforcing section 50-2 is vacated.

IV.

Summary Judgment

We review the District Court's grant of summary judgment de novo, using the same standard under Federal Rule of Civil Procedure 56(c) as applied by the District Court. See Toney v. WCCO Television, Midwest Cable & Satellite, Inc., 85 F.3d 383, 386 (8th Cir. 1996); Excalibur Group, Inc. v. City of Minneapolis, 116 F.3d 1216, 1219

(8th Cir. 1997). Under Rule 56(c), summary judgment is warranted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The material facts in this case are undisputed. Section 50-2 does not prohibit the handing out of leaflets or the solicitation of donations–it merely forbids the sale of goods not explicitly permitted. The City now concedes that Kean and Harmon's activities were noncommercial in nature and did not fall within the ambit of section 50-2. Furthermore, as the City wisely admits, Appellees' distribution of jewelry and other items, coupled with copies of the pamphlets which they use to spread their message, constitutes "core speech" fully protected by the First Amendment. See Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 632 (1980); Burnham v. Ianni, 119 F.3d 668, 674 (8th Cir. 1997).

Despite these admissions, or perhaps because of them, the City argues that section 50-2 cannot be unconstitutional as applied to Kean and Harmon because the ordinance simply does not apply to them. This argument might carry some weight if Appellees were seeking a declaratory judgment against the constitutionality of 50-2 before it took effect. However, that is not the case here. Section 50-2 has been applied to Kean and Harmon. No amount of linguistic argument, however correct, can erase this fact. Harmon was formally cited for violating the ordinance; Kean was threatened with sanction by officers who advanced section 50-2 as their justification. If the City were to absolve itself of liability for prior wrongs simply by recanting an interpretation of a statute it had wrongly applied, it would "create a serious gap in the protection intended by federal civil rights actions." (Appellees' Br. at 26.)[7] By unjustifiably

---

[7]The City can, of course, impose valid time, place, and manner restrictions on speech which is protected by the First Amendment, provided that the regulations "are

10–

stifling activity that was protected by the First Amendment, the application of section 50-2 was clearly unconstitutional as applied to Kean and Harmon.

Having answered the dispositive as-applied question, the District Court, however, unnecessarily proceeded to considering the constitutionality of the ordinance on its face. See Renne v. Geary, 501 U.S. 312, 323-24 (1991); Jacobsen v. Howard, 109 F.3d 1268, 1274-75 (8th Cir. 1997). Because ruling on the facial constitutionality of an ordinance when such action is not necessary to grant the plaintiffs relief risks unduly interfering with attempts by local governments to combat serious local problems, cf. Erznoznik v. City of Jacksonville, 422 U.S. 205, 215 (1975), we vacate the portion of the District Court's Order which declared section 50-2 unconstitutional on its face and enjoined its enforcement.

V.

Attorney Fees

The District Court held that in light of Appellees prevailing over the City, Appellees were entitled to an award of attorney fees pursuant to 42 U.S.C. § 1988. The court then found that the fees and hours calculated were reasonable. The City challenges the award of fees on the basis of unitemized time sheets and excessive hours expended.

---

justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984)). However, because the City admits that section 50-2 does not regulate Appellees' noncommercial activities, it does not attempt to defend the constitutionality of applying the ordinance to Kean and Harmon. In light of that silence, we will not examine the issue.

We review a district court's decision whether to award attorney's fees for abuse of discretion. Title 42 of the United States Code § 1988 provides in pertinent part that in a § 1983 action, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. The decision to award attorneys fees under that statute rests with the broad discretion of the district court and will not be reversed absent an abuse of discretion. Jenkins v. Missouri, 127 F.3d 709, 713 (8th Cir. 1997). Given the facts of this case and the District Court's well-reasoned fee order, we affirm the award of fees.

## VII.
### Damages Award

Pursuant to § 1983, a prevailing party may receive a damage award from the court. Here, after carefully considering the facts of the case, the District Court awarded Kean $10,000 and Harmon $25,000. After reviewing the District Court's findings of fact under a clearly erroneous standard, see Hall v. Gus Construction Co., Inc., 842 F.2d 1010, 1017 (8th Cir. 1988), we affirm the District Court's award.

## VIII.
### Conclusion

The District Court is affirmed on its treatment of the Younger abstention doctrine and as to Appellees' constitutional challenge to section 50-2 as applied to them. Furthermore, the District Court was correct in determining that Kean had standing to seek damages. However, because the District Court unnecessarily considered the constitutionality of section 50-2 on its face, that portion of the District Court's opinion is vacated. Furthermore, in light of the City's admission that section 50-2 does not apply to the noncommercial activities of Kean and Harmon, the portion of the District

12–

Court's order which grants Appellees injunctive relief against the City is vacated as well.

A true copy.

   ATTEST:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.