# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-1382

_____

Josh Brewington

*Plaintiff - Appellant*

v.

Ben Keener, Officer, Individually and in his Official Capacity as an Independence County Sheriff's Deputy; Steve Jeffery, Sheriff, Individually and in his Official Capacity as Sheriff of the Independence County Sheriff's Department

*Defendants - Appellees*

_____

No. 17-1433

_____

Josh Brewington

*Plaintiff - Appellant*

v.

Ben Keener, Officer, Individually and in his Official Capacity as an Independence County Sheriff's Deputy; Steve Jeffery, Sheriff, Individually and in his Official Capacity as Sheriff of the Independence County Sheriff's Department

*Defendants - Appellees*

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Batesville

Submitted: April 11, 2018
Filed: August 30, 2018

Before SMITH, Chief Judge, WOLLMAN and LOKEN, Circuit Judges.

SMITH, Chief Judge.

In this excessive force suit, Josh Brewington appeals the district court's[1] grant of summary judgment to Independence County ("County") Sheriff Steve Jeffery and Deputy Ben Keener in their official capacities, as well as the grant of qualified immunity to Sheriff Jeffery in his individual capacity. Brewington also asserts that following entry of default judgment against Deputy Keener in his individual capacity, the district court erroneously calculated Brewington's compensatory damages and attorneys' fees. We affirm.

## I. *Background*

On August 26, 2014, Brewington stole items from the local Walmart. He fled the scene in a vehicle with potential accomplices. Deputy Keener was responding to the theft call and was walking toward the Walmart entrance as Brewington and company drove by in the parking lot.

Law enforcement officers soon stopped the vehicle and removed Brewington and the other individuals from the car. The officers handcuffed Brewington and his companions and placed them on the ground in seated positions near the vehicle. Soon after, Deputy Keener arrived at the arrest scene. Without provocation and without

---

[1]The Honorable James M. Moody Jr., United States District Judge for the Eastern District of Arkansas.

communicating his intent to the other officers, Deputy Keener angrily kicked Brewington once to the side of his face. Afterwards, the other officers called an ambulance for Brewington, which soon arrived. The next day, Deputy Keener submitted his resignation to the County Sheriff's Office, turning in his badge and his gun. The County terminated Deputy Keener as well. The incident led to criminal charges against Deputy Keener, and he eventually pleaded guilty to third-degree battery.

Brewington sued Sheriff Jeffery[2] and Deputy Keener, both in their official and individual capacities, alleging excessive force during his arrest under 42 U.S.C. § 1983, Ark. Code Ann. § 16-123-105(a), and Arkansas tort law. Brewington acknowledged that the County had a written use-of-force policy and that Deputy Keener's kick violated the policy. Brewington, however, alleged that despite the written policy, the County Sheriff's Office had an unwritten rule, policy, or custom encouraging its officers to physically assault suspects who attempt to flee. He alleged that Sheriff Jeffery had instituted the unwritten policy or custom and that Sheriff Jeffery failed to adequately train or supervise Deputy Keener.

Upon consideration of the defendants' motion, the district court granted summary judgment in favor of Sheriff Jeffery and Deputy Keener in their official capacities. The court dismissed those claims after finding "no evidence to demonstrate that the actions of [Deputy] Keener were motivated by a County policy or custom of violating citizen's rights to be free from excessive force." *Brewington v. Keener*, No. 1:15-cv-00088-JM, 2017 WL 5953131, at *2 (E.D. Ark. Feb. 1, 2017). The district court also found that Brewington failed to present "proof of 'widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law.'" *Id.* (quoting *Smith v. Watkins*, 159 F.3d 1137, 1138 (8th Cir. 1998)). It also granted qualified immunity to Sheriff Jeffery, finding that Brewington "offer[ed] no

_____

[2]Sheriff Jeffery is no longer the sheriff of the County.

-3-

proof that Sheriff Jeff[er]y had notice of a pattern of conduct by Keener that violated a clearly established constitutional right." *Id.* at *3 (citation omitted).

The County, having terminated Deputy Keener's employment, declined to defend Deputy Keener against Brewington's individual capacity claims. Deputy Keener failed to answer Brewington's complaint or to appear before the district court to defend the lawsuit. The court granted Brewington's motion to enter default judgment against Deputy Keener. The court proceeded to hear evidence on damages. At a bench trial, Brewington's medical expert testified about the extent of Brewington's dental damages and opined that Brewington required complete and permanent dentures. The district court awarded Brewington $38,693.67 in compensatory and $75,000 in punitive damages against Deputy Keener. Brewington's counsel requested $41,920.00 in attorneys' fees, but the district court reduced the award to $16,500, citing duplicative work.

## II. *Discussion*

Brewington appeals, contending that the district court erroneously granted summary judgment in favor of Sheriff Jeffery and Deputy Keener in their official capacities. Brewington also asserts the district court erred in granting qualified immunity to Sheriff Jeffery. Next, he claims the district court misapplied the standard for causation in calculating compensatory damages. Last, Brewington avers that the district court abused its discretion in reducing the attorneys' fees award. We address each argument in turn.

### A. *Official Capacity Claims*

Brewington argues that the district court erred in granting summary judgment to Sheriff Jeffery and Deputy Keener in their official capacities. Brewington asserts that despite having an official written policy against the use of excessive force, the County also had an unstated, unofficial contrary custom and practice. This alleged unstated policy condoned excessive force against arrestees who attempt to flee.

Alternatively, Brewington contends that because Sheriff Jeffery was a final policymaker, his unwritten policy of excessive force has the force of command sufficient for county liability. "We review a district court's grant of summary judgment *de novo*, drawing all reasonable inferences, without resort to speculation, in favor of the nonmoving party." *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005)). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing *Johnson*, 424 F.3d at 810).

Brewington filed suit against Sheriff Jeffery and Deputy Keener in their official capacities,[3] and as such, "it must be treated as a suit against the County." *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

---

[3]The Arkansas Civil Rights Act (ACRA) directs Arkansas courts to "look for guidance to state and federal decisions interpreting the Civil Rights Act of 1871, as amended and codified in 42 U.S.C. § 1983." Ark. Code Ann. § 16-123-105(c). The Arkansas Supreme Court also noted with approval that "the [Arkansas] court of appeals has relied on federal precedent to analyze an excessive-force claim under the ACRA." *Graham v. Cawthorn*, 427 S.W.3d 34, 45 (Ark. 2013) (citation omitted); *see also Repking v. Lokey*, 377 S.W.3d 211, 220 (Ark. 2010) (citing *Fegans v. Norris*, 89 S.W.3d 919 (Ark. 2002)). We therefore analyze Brewington's federal and ACRA claims co-extensively using federal standards. *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 n.3 (8th Cir. 2000) ("Claims premised under the Arkansas Civil Rights Act of 1993 are analyzed in the same manner as [federal] claims." (citing Ark. Code Ann. § 16-123-103(c))); *see also Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013) (holding that "because [the appellant] did not explain why [her] ACRA claims warranted separate analysis, the district court did not err in dismissing the ACRA claims alongside the § 1983 claims" (citing *Lewis v. Jacks*, 486 F.3d 1025, 1030 (8th Cir. 2007))).

In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), [the Supreme Court] decided that a municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983. *Id.*, at 694–695, 98 S. Ct. at 2037–38. "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *Springfield v. Kibbe*, 480 U.S. 257, 267, 107 S. Ct. 1114, 1119, 94 L. Ed. 2d 293 (1987) (O'CONNOR, J., dissenting) (quoting *Monell*, *supra*, at 436 U.S. at 694, 98 S. Ct. at 2037–38).

*City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (ellipsis in original). When a plaintiff can point to a municipal policy that either "violates federal law, or directs an employee to do so," "no evidence is needed other than a statement of the municipal policy and its exercise" to establish a constitutional violation. *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389, 390 (8th Cir. 2007) (first quoting *Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997), then citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 822–23 (1985) (plurality opinion)). But when a plaintiff alleges an unwritten or unofficial policy, there must be "evidence of . . . a practice, so permanent and well-settled so as to constitute a custom, that existed." *Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)).

Thus, at issue here is whether the County officially or unofficially directed Deputy Keener to use excessive force against Brewington. Brewington acknowledges that the County has a written policy expressly prohibiting excessive force. He contends, however, that despite the written policy, the County Sheriff's Office had a custom or practice of excessive force against arrestees who attempt to flee. We explained previously that

-6-

a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation."

*Corwin v. City of Indep., Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)). The pattern of unconstitutional conduct must be so pervasive and widespread so "as to have the effect and force of law." *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996) (citations omitted).

Brewington attempts to show the County engaged in a pattern of widespread and persistent unconstitutional conduct by presenting affidavits from two former deputy sheriffs as well as Deputy Keener's testimony. The former deputies recounted an incident several years earlier where they alleged that Sheriff Jeffery was involved in an excessive force incident. Deputy Keener testified at his deposition that a sergeant informed him that the County Sheriff's Office itself had a policy of making an example of arrestees who attempt to flee; the sergeant allegedly told Deputy Keener to whip, kick, hit, or do something to deter the arrestees. Deputy Keener recalled one incident where—sometime between 2009 and 2014—a suspect was beaten as he walked through a gauntlet of officers. In sum, as evidence of the County's alleged unconstitutional conduct, Deputy Keener and the two former deputies described two prior incidents of excessive force. Additionally, Deputy Keener—through hearsay—testified that he was informed of an informal custom by a higher-ranking officer, but not by Sheriff Jeffery.

Brewington's evidence falls short. First, inadmissible hearsay discovered during discovery may not be used to defeat summary judgment. *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 723 (8th Cir. 2003) ("There are limits on what kinds of evidence a judge may consider in reviewing a motion for summary judgment, and inadmissible evidence obtained during discovery cannot be used to defeat such a motion." (citing *Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001))). Brewington presents no basis for admission of Deputy Keener's hearsay testimony. Second, in the face of an express municipal policy prohibiting excessive force, two incidents of excessive force—even assumed to be true—cannot be considered a pattern of widespread and pervasive unconstitutional conduct. *See Smith*, 159 F.3d at 1138 ("We recently held that two specific complaints and various rumors about an officer were not sufficient to establish a policy or custom of condoning unconstitutional conduct." (citing *Andrews*, 98 F.3d at 1076)); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (holding that evidence of an officer brandishing his handgun during a traffic stop, committing one other incident of deadly force, and receiving two complaints of excessive force insufficient to establish a pattern of unconstitutional conduct); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (concluding that eleven incidents were insufficient to establish an unconstitutional pattern).

In the alternative, Brewington argues that because Sheriff Jeffery was a final policymaker, his action constitutes the creation of an unofficial custom. *See Davison*, 490 F.3d at 659 ("[A]n unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." (quoting *Praprotnik*, 485 U.S. at 123)). However, this argument suffers from the same evidentiary infirmity as Brewington's prior contention. Other than Deputy Keener's hearsay testimony that a higher-ranked officer told him of an excessive force custom, Brewington offers no evidence that Sheriff Jeffery ever instituted the custom or practice. Brewington's evidence therefore failed to demonstrate the existence of an unofficial excessive force custom or practice

that has the effect or force of law in the County. Finally, even assuming the existence of an unconstitutional custom, Brewington cannot show that the policy was the "moving force" behind Deputy Keener's conduct. Deputy Keener was asked in his deposition, "Sitting here today, do you know why you kicked Josh?" J.A. at 76. He answered, "Other than just being angry, no." *Id.* Brewington's anger—not any county policy or directive—was the moving force for his conduct.

In sum, Brewington failed to prove the existence of an unconstitutional custom or policy. He also failed to show causation assuming there was such a custom or policy. Brewington therefore cannot establish municipal liability. *See Corwin*, 829 F.3d at 700. The district court correctly granted summary judgment in favor of Sheriff Jeffery and Deputy Keener in their official capacities.

## B. *Qualified Immunity*

Brewington also argues on appeal that the district court erroneously granted qualified immunity to Sheriff Jeffery. He contends Sheriff Jeffery failed to train Deputy Keener adequately.[4] This argument lacks merit, and we affirm.

"Sheriff [Jeffery] may be liable under § 1983 if he (1) had 'notice of a pattern of unconstitutional acts committed by subordinates'; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take 'sufficient remedial action'; (4) proximately causing injury to [Brewington]." *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012) (quoting *Andrews*, 98 F.3d at 1078). Ultimately, Brewington must prove that Sheriff Jeffery "had notice that the training procedures and supervision

---

[4]Brewington also alleged that Sheriff Jeffery failed to supervise Deputy Keener in his complaint, but he appears to abandon this claim on appeal. *See Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008) ("Claims not raised in an opening brief are deemed waived." (citations omitted)).

were inadequate and likely to result in a constitutional violation." *Id.* at 356 (quoting *Andrews*, 98 F.3d at 1078).

Brewington says that Sheriff Jeffery's failure to train is readily apparent from the purported policy of "beat[ing] people up," *see* Appellant's Br. at 39, and from the other officers' failure to intervene when Deputy Keener kicked Brewington. He does not allege any other incidents of misconduct by Deputy Keener. We have already discussed Brewington's failure to show an unconstitutional policy or custom. *See supra* Part II.A. Under our precedent, a single incident cannot serve as notice for a pattern of misconduct. *See Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989) (holding that a single incident, or a series of isolated incidents, is usually insufficient to infer a pattern). On this record, Brewington failed to show failure to train, and Sheriff Jeffery is entitled to qualified immunity.

## C. *Causation Standard for Compensatory Damages*

Brewington argues that the district court applied an incorrect causation standard to calculate Brewington's dental damages stemming from Deputy Keener's kick to his face. We disagree and find no abuse of discretion. *See Stevens v. McHan*, 3 F.3d 1204, 1207 (8th Cir. 1993) (standard of review for § 1983 damages award).

As we explained:

> In order to establish a violation of constitutional rights under § 1983, the plaintiff must prove that the defendant's unconstitutional action was the "cause in fact" of the plaintiff's injury. *Carey v. Piphus*, 435 U.S. 247, 263, 98 S. Ct. 1042, 1052, 55 L. Ed. 2d 252 (1978); *Cowans v. Wyrick*, 862 F.2d 697, 703 (8th Cir. 1988) (McMillian, J., concurring). Conduct is the cause in fact of a particular result if the result would not have occurred *but for the conduct*. Similarly, if the result would have occurred without the conduct complained of, such conduct cannot be a cause in fact of that particular result. *Carey*, 435 U.S. at 263, 98 S. Ct.

at 1052; *see* W. Page Keeton, *Prosser and Keeton on the Law of Torts*, § 41, at 264 (5th Ed. 1984).

*Butler v. Dowd*, 979 F.2d 661, 669–70 (8th Cir. 1992) (emphasis added). Contrary to Brewington's assertion, Arkansas courts also apply the but-for standard of causation:

> Proximate cause is that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the result would not have occurred. *Wal-Mart Stores, Inc. v. Kilgore*, 85 Ark. App. 231, 148 S.W.3d 754 (2004). This traditional tort standard requires proof that "but for" the tortfeasor's negligence, the plaintiff's injury or death would not have occurred. *Dodd v. Sparks Reg'l Med. Ctr.*, 90 Ark. App. 191, 204 S.W.3d 579 (2005).

*Thomas v. Meadors*, 527 S.W.3d 724, 731 (Ark. Ct. App. 2017). While a medical expert need not invoke a set of "magic words," he nevertheless must articulate but-for causation, "to be judged upon the entirety of the opinion." *Wal-Mart Stores, Inc.*, 148 S.W.3d at 759 (citation omitted).

At the bench trial, Brewington described Deputy Keener's kick as a "field-goal kick[]" to his face. Transcript of Bench Trial at 19, *Brewington v. Keener*, No. 1:15-cv-00088-JM (E.D. Ark. Jan. 23, 2017), ECF No. 45. The kick immediately knocked out two of Brewington's teeth. Brewington's dental expert testified that Brewington "had a lot of [previous] dental work done, root canals and crowns and fillings and extractions." *Id.* at 28. At the time the expert examined Brewington—more than a year and a half after the incident with Deputy Keener—Brewington had lost seven teeth. He also had abscesses on eleven teeth. The dentist concluded that Brewington "probably had some things that needed to be done as a result of the accident or the incident," but also "probably would have had to have something done to catch up with what he had done before." *Id.* at 30. He opined that Brewington needed a full set of permanent dental implants, because a "partial denture requires teeth to support it

-11-

and he has no teeth to support a partial denture, no teeth in there that are strong enough or could be made strong enough to take care of it for any period of time." *Id.* at 31. But, the expert also concluded that Brewington "has [some] solid teeth in [his mouth] now." *Id.* at 36. At the end of the trial, the district court concluded that it did not

> feel that [it had] sufficient evidence to award [the damages amount for the full implants] because the doctor didn't testify that but for the actions of Mr. Keener that Mr. Brewington would not have needed the dentures altogether. He had a complex dental situation or history and [the court] didn't hear anything from the doctor that said but for Keener's actions, he would have needed those.

*Id.* at 42.

Brewington challenges the district court's conclusion, arguing that he is an eggshell plaintiff[5] whose prior deteriorated teeth became exacerbated by Deputy Keener's kick, requiring a full set of restorative implants. Brewington's expert's opinion belies this contention. The dentist testified that Brewington still had solid teeth after the incident and that he had sustained damage to multiple teeth, but not all. The egg-shell plaintiff rule is inapplicable here; Deputy Keener's kick did not proximally cause damage to all of Brewington's teeth. Thus, the district court correctly concluded that Deputy Keener's kick was not the but-for cause for all of Brewington's dental injuries, and we find no abuse of discretion.

---

[5]"[T]he 'egg-shell plaintiff' rule . . . in essence [states that] a defendant takes a plaintiff as he finds [him]." *Freeman v. Busch*, 349 F.3d 582, 590 (8th Cir. 2003) (citation omitted).

D. *Attorneys' Fees Calculation*

Brewington also contests the district court's reduction of his requested attorneys' fees. "Attorney's fees are within the broad discretion of the district court and will not be reversed absent an abuse of discretion." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (citing *Harmon v. City of Kan. City*, 197 F.3d 321, 329 (8th Cir. 1999)).

To calculate attorneys' fees, courts typically begin by using the lodestar method. This method "'multipl[ies] the number of hours reasonably expended by the reasonable hourly rates.' When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Id.* (first quoting *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002), then citing *Warnock v. Archer*, 397 F.3d 1024, 1027 (8th Cir. 2004)). "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for . . . limited success." *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983). The court must "provide a concise but clear explanation of its reasons for the fee award." *Id.* at 437.

Here, the district court reduced Brewington's requested attorneys' fees from $41,920 to $16,500, citing duplicative work. The court stated that it also "consider[ed] the results obtained by [Brewington's] counsel in determining the reasonableness of the fee award." Order at 2, *Brewington v. Keener*, No. 1:15-cv-00088-JM (E.D. Ark. Feb. 22, 2017), ECF No. 42. Brewington's attorneys conceded to some amount of duplicative work, *see* Appellant's Br. at 56–57, but argue that the reduction is disproportionate with the identifiable duplication of work.

We have reviewed in depth Brewington's supporting documentation. One attorney charged $17,000—40.6 percent of the requested total—for e-mails alone. This amount is questionable. Additionally, Brewington concedes to some duplication

-13-

of work. Given the limited success in this case, we find that a significant reduction in attorneys' fees is appropriate. *See Hensley*, 461 U.S. at 436 ("If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.").

## III. *Conclusion*

We find the ultimate amount determined by the district court to be reasonable. We affirm.

_____