# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2206

_____

Mary R. Meier

*Plaintiff - Appellee*

v.

City of St. Louis, Missouri

*Defendant - Appellant*

St. Louis Board of Police Commissioners; Richard H. Gray, Member, St. Louis Board of Police Commissioners, in his official capacity; Thomas Irwin, Member, St. Louis Board of Police Commissioners, in his official capacity; Erwin Switzer, Member, St. Louis Board of Police Commissioners, in his official capacity; Bettye Battle-Turner, Member, St. Louis Board of Police Commissioners, in her official capacity; Francis G. Slay, in his official capacity as a member ex officio of the St. Louis City Board of Police Commissioners; Doc's Towing, Inc.; St. Louis P.O. House, DSN 219

*Defendant*s

_____

No. 22-2332

_____

Mary R. Meier

*Plaintiff - Appellant*

v.

City of St. Louis, Missouri

*Defendant - Appellee*

St. Louis Board of Police Commissioners; Richard H. Gray, Member, St. Louis Board of Police Commissioners, in his official capacity; Thomas Irwin, Member, St. Louis Board of Police Commissioners, in his official capacity; Erwin Switzer, Member, St. Louis Board of Police Commissioners, in his official capacity; Bettye Battle-Turner, Member, St. Louis Board of Police Commissioners, in her official capacity; Francis G. Slay, in his official capacity as a member ex officio of the St. Louis City Board of Police Commissioners; Doc's Towing, Inc.; St. Louis P.O. House, DSN 219

*Defendant*s
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 12, 2023
Filed: August 28, 2023
_____

Before LOKEN, SHEPHERD, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Mary Meier filed a § 1983 lawsuit against the City of St. Louis and Doc's Towing, Inc., alleging that the defendants violated her Fourth and Fourteenth Amendment rights when they detained her truck pursuant to a "wanted" report. We held in the first appeal of this case that the evidence was sufficient for Meier's claims to survive summary judgment. Meier then settled with Doc's Towing, and her case against the City proceeded to trial. The district court[1] granted judgment as a matter

_____
[1]The Honorable Matthew T. Schelp, United States District Judge for the Eastern District of Missouri.

of law in favor of the City on Meier's unreasonable seizure claim, and the jury returned a verdict for Meier on her due process claim and awarded her compensatory damages. The district court denied the City's post-trial motion for judgment as a matter of law but partially granted its motion to reduce the damages award. Both the City and Meier appeal, and we affirm.

## I.

"We recite the relevant facts in the light most favorable to the jury's verdict." Quigley v. Winter, 598 F.3d 938, 944 n.2 (8th Cir. 2010). Meier owned a Ford truck that she and her son Ben used for their family business. In December 2015, Officer Ashley Kelly of the St. Louis Metropolitan Police Department (SLMPD) responded to a hit-and-run accident. Officer Kelly believed that Meier's truck was involved in the accident, and so she instructed an SLMPD clerk to enter a "wanted" report for the truck into the Regional Justice Information Service computer network (REJIS). REJIS, which is the product of a cooperative agreement between the City and St. Louis County, allows law enforcement agencies within the region to share information. The wanted report for Meier's truck was entered into REJIS pursuant to SLMPD's policy and practice.

On March 17, 2016, City of Maryland Heights Police Department (MHPD) officer Clifford House spotted Meier's truck in the parking lot of a hotel. Meier's son Ben and a woman were inside the truck at the time. Officer House ran a check on the truck's license plate number, which pulled up the REJIS wanted report. House noted that SLMPD had entered the report, and he understood the report to mean that SLMPD wanted the truck for investigative purposes. House decided to approach the truck's occupants, and he ultimately arrested the two for reasons unrelated to the wanted report. House then called Doc's Towing to remove the truck from the parking lot, citing the wanted report on the truck as one of the reasons for having it towed. Officer House told the Doc's Towing driver who responded to his call that the City of St. Louis wanted the truck, and he instructed the driver to "make sure [to] put a hold on it." The driver, who understood the terms "hold" and

-3-

"wanted" to mean that the vehicle should remain in Doc's Towing's possession until the police authorized its release, wrote "hold" on the truck's back window and towed it to Doc's Towing.

House contacted SLMPD and requested confirmation that the wanted report on Meier's truck was still active. SLMPD confirmed it was and asked MHPD to provide it with information about the arrest of the truck's occupants. SLMPD also asked MHPD to "advise [the] driver/owner of [the] vehicle to respond to [SLMPD's] First District Detective Bureau regarding release of [the] vehicle."

The following day, on March 18, Meier went to Doc's Towing to retrieve her truck. Doc's Towing told Meier that the City still had a hold on the vehicle, meaning that the company could not release it to her. Meier then called Doc's Towing "every day" for a week to see if the truck had been released. Meier never received any notice from the City that it was detaining her truck or any communication explaining what she needed to do to get the truck released.

Ben also tried contacting the City about the truck. On March 23, Ben spoke with SLMPD Detective John Russo. When Ben asked about how to get the truck released, Russo responded that Ben would have to come to the SLMPD station "to answer questions relative to the accident."

Meier hired a lawyer, Jeffrey Rath, for help in getting the truck back. Rath confirmed with both MHPD and Doc's Towing that it was SLMPD's wanted report that was preventing the truck's release. Rath called SLMPD "several times" and left "several messages." He then started going to the police station because he "got tired of being stuck in voicemail." Rath finally managed to speak with a detective and explained that Ben was unavailable to meet with SLMPD about "the accident" because Ben was in custody. The detective then gave Rath a boilerplate "release order" form. The form, titled "SLPD release of hold," stated: "This is to notify you that the 'Hold Order' . . . relative to the vehicle in your possession . . . is hereby rescinded." The detective wrote on the form that the reason for the release of the "3-

-4-

17-16" hold order was that the truck was "no longer wanted." Rath faxed the release order to Doc's Towing, and Doc's Towing released the truck to Meier on April 29. Meier had to pay fees to Doc's Towing for the nearly two-month storage of her truck.

Meier sued the City and Doc's Towing under 42 U.S.C. § 1983, claiming the defendants had violated her Fourth Amendment right against unreasonable seizure and her Fourteenth Amendment right to due process. More specifically, she contended that the City had a custom of reporting vehicles as "wanted" in order to detain them without a warrant and without proper notice or process. The district court granted summary judgment for the defendants, but we reversed, concluding that Meier had adduced evidence sufficient to establish the defendants' liability on both of her claims. Meier v. City of St. Louis (Meier I), 934 F.3d 824, 828 (8th Cir. 2019).

On remand, Meier settled with Doc's Towing, and her claims against the City were tried to a jury. At the close of Meier's evidence, the district court granted the City's motion for judgment as a matter of law on Meier's unreasonable seizure claim. The jury then returned a verdict for Meier on her due process claim, awarding her $7,500 in damages, and the district court denied the City's renewed motion for judgment as a matter of law or a new trial. The City also moved to amend the judgment, seeking a set-off of the jury's award based on the settlement money Meier received from Doc's Towing. The district court partially granted that motion, allowing a set-off of $2,000. The City now appeals, and Meier cross-appeals.

II.

The City challenges the district court's denial of its post-trial motion for judgment as a matter of law, which we review de novo, viewing the evidence in the light most favorable to Meier. See Jacobson Warehouse Co. v. Schnuck Markets, Inc., 13 F.4th 659, 679 (8th Cir. 2021). "Judgment as a matter of law is only appropriate when no reasonable jury could have found for the nonmoving party," and "conflicts in the evidence must be resolved in favor of the verdict." Hopman v.

-5-

Union Pac. R.R., 68 F.4th 394, 399 (8th Cir. 2023) (cleaned up and citations omitted).

A municipality like the City can be held liable under § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). When the municipal policy is an unwritten custom, the plaintiff must prove (1) "the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct" by the municipality's employees; (2) "deliberate indifference to or tacit authorization of such conduct" by the municipality's "policymaking officials after notice to the officials of that misconduct"; and (3) that the plaintiff "was injured by acts pursuant to the [municipality's] custom, i.e., that the custom was a moving force behind the constitutional violation." Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Independence, 829 F.3d 695, 700 (8th Cir. 2016)).

The jury found that the City had a custom that caused a violation of Meier's due process rights under the Fourteenth Amendment. Because due process rights are protected only against infringement by state actors, see U.S. Const. amend. XIV, § 1, the jury was required to find that Doc's Towing's retention of Meier's truck was "fairly attributable" to the City. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 936–37 (1982) (explaining that in order to meet the state action requirement of the Fourteenth Amendment, the conduct at issue must be "fairly attributable" to the state); id. at 929 ("[I]n a § 1983 action brought against a state official, the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical."). Whether state action is present "must turn on the particular facts of the case," and the "one unyielding requirement is that there be a 'close nexus' . . . between the state and the alleged [constitutional] deprivation itself." Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007) (quoting Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)).

Here, the City first disputes that Doc's Towing's conduct was "fairly attributable" to it. In light of the trial record, however, a reasonable jury could have determined that Meier presented sufficient evidence of a "close nexus" between the City and the due process violation she alleged. For instance, SLMPD Captain Steven Mueller, whose deposition testimony was admitted at trial, explained that a wanted report on a vehicle is equivalent to a request to "[d]etain it for" SLMPD. The trial record further established that SLMPD reported Meier's truck as "wanted," notified MHPD that the wanted report was still active on March 17, 2016—the day that MHPD officer House spotted the truck in a parking lot—and instructed MHPD to "advise [the] driver/owner" of the vehicle "to respond to the [SLMPD] regarding" its release. An SLMPD detective then told Meier's son Ben that he needed to report to SLMPD "to answer questions relative to the accident" in order to get the truck back. And it was not until SLMPD issued a "release order" that Doc's Towing released the truck to Meier. From this evidence, a reasonable jury could have concluded that the unlawful detention of Meier's vehicle at Doc's Towing—which, according to the jury verdict, amounted to a violation of Meier's due process rights— was fairly attributable to the City.

The City also contends that there was "no evidence of other instances of similar actions" by the City, and therefore there was "no evidence of a custom or practice" on the City's part. But the trial record indicates otherwise. The evidence at trial showed that the City had taken similar actions in the past. Officers would routinely enter a wanted report for a vehicle into REJIS when they had only a description of the vehicle. That report instructed any officers or agencies using REJIS to "detain [the vehicle] for [SLMPD]," and once the vehicle was detained, the "process" that SLMPD provided for its release was to have the driver appear at the police station and submit themselves to the "investigative procedure" deemed necessary by SLMPD. If SLMPD was satisfied with the driver's cooperation, it would then issue a release order.

Indeed, Captain Mueller testified that issuing a wanted report is a "standard investigative procedure" used by SLMPD "to find out who the driver was at the time

-7-

of [an] accident" and that a wanted report is an investigative tool and an official action by the City. And Rath testified that in his experience, SLMPD "regularly" detains vehicles in order to identify and question suspects—even when the suspects are not the vehicles' owners. A jury could reasonably infer from this evidence that SLMPD's practice of using wanted reports to detain vehicles as investigative leverage—providing no way for owners to retrieve their vehicles other than by acquiescing to SLMPD's investigative demands—was a pervasive custom that violated Meier's right to a "opportunity to be heard" in a "meaningful manner." Fuentes v. Shevin, 407 U.S. 67, 80 (1972) ("It is . . . fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner." (cleaned up and citation omitted)); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of . . . property be preceded by notice and opportunity for hearing appropriate to the nature of the case." (cleaned up and citation omitted)).

Our conclusions here are bolstered by our ruling in Meier I, where we held that based on the summary judgment record, a "reasonable jury could find that Meier's truck was towed and held pursuant to SLMPD's . . . policy." 934 F.3d at 829. We see no meaningful difference between the evidence presented at the summary judgment stage and the evidence presented at trial. The City's suggestion, then, that the latter evidence is so lacking that "no reasonable jury could have found for" Meier is unavailing. Hopman, 68 F.4th at 399 (citation omitted).

In sum, the City's challenge to the district court's denial of its motion for judgment as a matter of law fails, and we affirm the verdict on Meier's due process claim. As to Meier's assertion on cross-appeal that the district court erred by granting the City judgment as a matter of law on her unreasonable seizure claim, we decline to reverse that ruling. Her due process claim and unreasonable seizure claim sought compensation for the same injury, and she concedes that she would not be entitled to additional compensatory damages beyond those that were already awarded by the jury. Nor does she present any arguments in her briefing that she would be entitled to other forms of relief. Because Meier fails to articulate what

-8-

relief she could obtain beyond what she has already achieved by way of the jury verdict, we will not remand for further consideration of this claim. See Warren v. Pataki, 823 F.3d 125, 143 (2d Cir. 2016) (affirming the district court's grant of judgment as a matter of law on certain claims because "plaintiffs could not have obtained any additional damages" had those claims been submitted to the jury, but cautioning that "[p]erhaps it is usually the better practice to allow all liability claims to go to the jury").

## III.

The City also challenges the district court's ruling on its post-trial motion to "set-off," or reduce, the jury award, which we review for abuse of discretion. See Fed. R. Civ. P. 59(e); Continental Indem. Co. v. IPFS of N.Y., LLC, 7 F.4th 713, 717 (8th Cir. 2021) ("We review rulings on Rule 59(e) motions for abuse of discretion."); see also Zivitz v. Greenburg, 279 F.3d 536, 539 (7th Cir. 2002) (reviewing for abuse of discretion the district court's ruling on a Rule 59(e) motion "to offset the damages award by the amount paid by the settling defendants"). Specifically, the City seeks a larger set-off for the settlement money Doc's Towing paid to Meier for her claims—not just the $2,000 set-off granted by the district court.

When Meier settled her claims against Doc's Towing, the two entered into a settlement agreement that specified the monetary amounts that the company would pay Meier for each of her claims.[2] The City then stipulated with Meier that it would be entitled to a damages set-off if Meier succeeded at trial. The City does not challenge the settlement agreement, nor does it dispute the stipulation. In fact, the City relies on the terms of the agreement and the stipulation to support its request for a larger set-off.

---

[2]The settlement agreement is under seal. The district court declined to "needlessly . . .disclose the details of the settlement agreement," but it reviewed the agreement and mentioned select details necessary to address the parties' disputes. We do the same here.

The stipulation stated that the City "would be entitled to a set off for any sums paid by [Doc's Towing], that was attributable to the claims pending before [the district court]." In the settlement agreement between Meier and Doc's Towing, the "actual damages" attributed to the two claims pending before the district court—Meier's unreasonable seizure and due process claims—totaled $2,000. The district court accordingly offset the $7,500 jury award by that amount, reducing the award to $5,500. Meier's net compensation for her damages, then, was $7,500. In other words, after accounting for Doc's Towing's payment for the actual damages stemming from Meier's two claims, Meier was remunerated for exactly the amount of damage the jury determined she had incurred as a result of the detention of her truck. For this reason, we disagree with the City's contention that offsetting the jury award by only $2,000 allowed Meier to be made "more than whole" in violation of Missouri law. See Mo. Ann. Stat. § 537.060; Poage v. Crane Co., 523 S.W.3d 496, 528 (Mo. Ct. App. 2017) (explaining that in order to "prove a double recovery" under § 537.060, "a defendant must demonstrate an overlap between . . . the injuries or damages for which a plaintiff has received compensation" (emphasis and citation omitted)).

The City also appears to argue that the district court should have offset the jury award not only by the actual damages provided for in the settlement agreement, but also by the attorney's fees Doc's Towing paid to Meier. We cannot conclude that reversal is warranted on that ground. The stipulation stated that the City was entitled to a set-off of the sums paid by Doc's Towing that were "attributable to the claims pending" before the district court. And the district court determined that the sums "attributable" were the actual damages for those claims, declining to include the attorney's fees in its calculation. See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988) ("As a general matter, . . . a claim for attorney's fees is not part of the merits of the action to which the fees pertain."). Indeed, the jury award included only compensatory damages, and Meier concedes that the City may later seek a set-off for attorney's fees once the district court resolves her application for such fees from the City. The City has presented no persuasive arguments that the

-10-

district court abused its "broad discretion" here.  Continental Indem., 7 F.4th at 717 (citation omitted).

IV.

For the foregoing reasons, we affirm the judgment of the district court.

_____